Thank you, Your Honor. Good morning, Your Honor. May it please the Court, David Zimmer on behalf of Appellant VACC. I'd like to reserve two minutes for rebuttal. Your Honors, this case involves a highly unusual set of facts that led to the putative settlement agreement and the dismissal of VACC's lawsuit based on terms to which VACC indisputably never intended to agree. Based on these facts, there are two independent reasons that the District Court's decision should be reversed, and that the putative settlement agreement is unenforceable and that the judgment should be lifted. First, the parties in the underlying lawsuit never intended to settle that suit at all, absent completion of a written agreement that was never completed in this case, in the underlying case. And second, even if the parties somehow entered into a binding settlement agreement, VACC is entitled to rescind that agreement under California law because VACC only entered into that unintended and unfair agreement based on a crucial factual mistake. Is there any evidence in the record showing that Mr. Byatt communicated his desire for the representation clause to the other side, to Mr. Davis? I understand there's a lot of evidence between Mr. Byatt and his lawyers, but is there anything that objective evidence saying that's communicated to the other side? No, Your Honor, and neither of our arguments depend on any such communication. But no, we're not arguing that Davis knew that VACC thought that there was that representation needed. But as to lack of mutual assent, what Davis did know, because a lot of this communication came from Davis, is that the parties had clearly envisioned a written agreement, and clearly envisioned that that written agreement was a required part of the settlement, and that there might be unresolvable disagreements in negotiating that agreement, even after the local settlement teleconference. And I'd point the Court in particular to excerpt of Record 79, where the parties stipulated that there will be a written agreement, and that there might be. But couldn't that interpret it as just filling in some of the court, and everyone has said that this is a settlement agreement, it's binding, and the written agreement is the details to be written further. You know, if there are any issues, this is, we're going to, you know, serve notice this way to this person, etc. So, I mean, that's how I view it, is that material terms are agreed upon, and it's a binding agreement, and written agreement is the non-material terms to be fleshed out later. Sure. And so, you know, again, in order of, so two responses. One, I don't think that that's certainly not the only way to read what happened here. I mean, in all this correspondence, there was a suggestion that VAC would have the opportunity to review this settlement agreement, and that VAC made that, that started before the settlement teleconference. If you look at page 64 from the Record, the stipulation, again, suggests that... But weren't all those communications between Mr. Bayek and his attorney, not between the two sides? Well, no, Your Honor. Again, for lack of mutual assent, there obviously were all of those communications, but for lack of correspondence from Davis' counsel. So, page 64 of the Record is an email from Davis' lawyer to VAC's lawyer saying, after the settlement teleconference, I will draft a written agreement, and I'll send it to you for your review. And that's, of course, consistent with the stipulation, and it's consistent with Davis' lawyer's insistence after Bayek refused to sign the settlement agreement because he didn't agree to its terms, his insistence that completing that written agreement was required in order to finalize the settlement. And I want to emphasize that our argument, in order to accept our argument, it doesn't need to be that our position is the only possible inference from these facts. The California courts have made clear that contract formation is an intensely factual question, and so long as our position is a permissible inference from the facts and from the allegations and the exhibits, then it becomes a factual question that needs to be resolved. Yeah, I was going to ask you that. So, I couldn't tell from the Record whether or not you are arguing that there are genuine incidents of material fact and the motion to dismiss should not have been granted. I'm looking at your fifth cause of action, and I think that's what you're arguing here. This fifth cause of action is that there was a stipulation for a dismissal, but that the parties were required to have a written agreement. And so, so that that meant if there wasn't a written agreement, there was no agreement. But the point here is, is that, and you cited the Ninth Circuit case that allows for your argument, but where you've had an oral agreement in court, but here your situation is different because the oral agreement that they had in court, your client was given the opportunity to say, these are not the specific terms of the agreement, and did not say, the court said, you could have a written agreement, but you're not required to. And so, to make it clear to the court or make it clear to opposing counsel, the thought that there was an agreement based upon the terms set forth by the court, wasn't your client required, either through his counsel or by himself? His counsel abandoned him to say, no, there's an additional term. That only occurred afterwards. So the defendants have the right to rely that those were the specific terms of the agreement and the essential terms. Well, so two things, Your Honor. First of all, just to be clear, and I'm not sure it matters that much for your question, but it's really the third cause of action that we're relying on, which is the cause of action for lack of mutual assent. But I agree that there's some overlap between that and the third cause of action. But I think that the answer, Your Honor, is that no, he wasn't obligated to say anything then. And the district court did not say at the settlement teleconference that those were the only terms. And under pretty clear California law, if you look at the Supreme Court's decision, the California Supreme Court's decision in Masterson that we cite on page 19 of our reply, that if, as Bayek believed, Davis had made this representation, then it would have been part of the agreement, even if it wasn't stated in the settlement teleconference. He has to believe that based off of outward manifestations, right? That's what I don't see. Where is the outward manifestation that the written agreement could include new terms? Most of the outward manifestations seem to say it's about memorializing what occurred during the settlement conference with the magistrate judge. I think the outward manifestations are unclear on that. We're not arguing that that isn't a permissible inference that a fact finder could draw, but nowhere it says there's no reference that these are the only material terms. And I think the reference to unresolvable disagreements in the stipulation suggests that they were not. And again, all of the correspondence suggests that BAK would have the opportunity to review the draft agreement. And again, if you look at 85 to 88 of the record, Davis's counsel, after he circulates a draft of the written settlement agreement, repeatedly urges Bayek to sign it because it's a required term of the settlement and that the settlement wasn't complete until Bayek signed it. And it was only after Bayek made clear that he would not sign it that Davis's counsel first took the position that, oh, actually, despite all of these things that were said before about you'll have the that the agreement is binding. But didn't Davis's counsel, you say that we have to memorialize the agreement as stated during the conference? And so to me, when you say memorializing, that means we're just putting down what we said before. We're not negotiating new terms. I mean, he might have used that word, but he also, you said that it was a required term of the settlement, that it was required to complete the settlement. And I think that if we're just talking about material terms, the idea that there would be these deep, unresolvable disagreements that might arise, I think that belies the idea that we're only talking about non-material terms. The one question I had, it's not in the record what was sent from Davis's counsel to Mr. Bayek. Did that draft settlement agreement only include the terms from the oral settlement conference? Sorry, you mean the correspondence prior to the settlement teleconference? No, post-settlement conference. Oh, I don't know because they're not in the record, but I don't believe, I believe that the only, I don't believe, we're not certainly arguing now that there were any other, anything else wrong with that other than the fact that Bayek didn't. It would just be evidence to show that they didn't think that you could renegotiate new terms in the written agreement after the settlement conference. Sure, but yeah, that's not in the record, and frankly, I unfortunately don't know the answer. I do, okay. Apart from the record, that was clear that the defendants decided that they weren't going to sign an agreement with the representation. So, somewhere there was an agreement that was presented by the defendants that didn't include it, and my understanding from what I read in the record was that he contested, no, you have to have the representation clause. Yeah, I don't, if I understand your question right, I don't disagree with that, but again, I think if you look at the overall, the outward manifestations as a whole, it shows that the parties understood that the written agreement negotiating that was key. I realize I only have 30 seconds left, but I also want to emphasize that, you know, even if the parties entered into a binding agreement, that Bayek is entitled to rescind that agreement under California law, and really the district court's only reason for dismissing that claim was this idea that Bayek's mistake was legal rather than factual, and that really, I think, is plainly incorrect in the sense that Bayek's mistake was a mistake about the facts as they really are, which under hedging concepts is the test. It was a mistake about what Davis had represented and what Davis had said, and that was really the district court's only basis for dismissing that. You would also have to prove that it was unconscionable under that theory, correct? Yeah, absolutely, and I think... So what's unconscionable about this agreement? Well, what this agreement does is it deprives back, it deprives back of crucial intellectual property that was potentially stolen without any financial recourse, and without any recourse, and without any financial compensation, and that is a fundamentally different substance of agreement than the one that Bayek thought it was entering into, and in a way, it's not that different from the Supreme Court's decision in Donovan, where you basically had an asset that a party gave away for far less than it believed it was giving it away for, and that's effectively what happened here. Back thought, back was unintentionally deprived of this potentially stolen intellectual property without any compensation and any potential recourse at all. Did the judge, the district court judge, make a finding as a matter of law that this was an agreement because the matter of law that your client had an obligation to say, there are additional provisions, and otherwise, according to the law, if you didn't do that, then the agreement stood as it was recited by the magistrate judge? I believe that was the basis of the district court's decision, and I think that that's frankly, that's clearly wrong as a matter of law. If you look at... What law are you relying on? If you look at the Court of Appeals' decision in Terry v. Conlin, you had a situation where the Court of Appeals said, sorry, the trial court said something very similar to what Judge Kim said here, where the judge said, this is a judicially supervised settlement agreement. It cannot be changed once you leave this courtroom, and if that was enough, as the district court effectively held here, then that should have been the end of the matter, but the Court of Appeal in that case looked to the overall parties' outward manifestations as a whole, not just what they said at the settlement teleconference, and concluded that those showed that the parties had not actually intended to be bound, that there was no completed settlement agreement. I saw in your reply brief that you raised the Kajabi case. Did you? Which case, sorry? The Kajabi v. Feather River. Anyway, that's okay. I looked at it, and I thought that was perhaps an argument you were making in terms of oral agreements, because you're not relying on that case? You know, I don't remember off the top of my head if we cited it, but we're certainly relying on the idea that the relevant universe of facts is not limited to the settlement teleconference itself, that the district court heard by not looking to the overall outward manifestations of the parties, and if you look at those here, again, we're not arguing that there, our argument is that there are multiple permissible inferences that could be drawn from what the parties said to each other about whether they intended to be bound at the settlement teleconference. Thank you. I'll give you two extra minutes after rebuttal. Good morning, Your Honor. My name is Patience Ren from Holland Law Council for Appellee Defendant John Davis. This case is about miscommunication between a client and his former counsel. At best, it amounts to a malpractice case, but that is not the reason to upend the settlement in our case and the countless number of settlements that trial courts across the nation work tirelessly to put together every day, every week, year in, and year out. If in-court settlement on the record does not count, then we are in trouble. To respond briefly to appellant's argument as to parties' intent to prepare written agreements, the case emanating from this very court, Doi v. Halokunami, is on all fours with this case. In that case, the parties enter into an in-court settlement on the record, and the plaintiff there appealed that settlement to this very court, making the very same arguments that appellants are making here. For example, the parties intended to prepare a written agreement, and the courts remarked that the defendant will prepare a written agreement. And Doi, the plaintiff, Doi said, I did not intend to agree to this settlement without a written agreement, and this court found that argument to be without merit. What do we do? Go ahead. The difference in that case, though, was that the plaintiff in that case said, well, I want to change the terms of the agreement, whereas in this case, the plaintiff here said, I need to add something. Your Honor, I don't believe that difference does not change the holding in Doi and does not carve out exception. First, what is important is what the contract says that manifests the parties' intent. As both in my circuit and California State Appellate Court, the parties' intent and whether there was mutual assent must be determined from the document itself. And here is the settlement on the record. And right out the gate, Judge Sally Kim, who moderated the settlement agreement, said, this is a binding oral settlement agreement. The parties may or are not required to have a written agreement. So, counsel, why wasn't Davis's responsibility to then clarify that we are going to have a written agreement or we're not going to have a written agreement? Your Honor, Davis agreed, as well as Bayard and Vag, agreed on the record that these are the terms. And one of the terms is that written agreement is an option, but it's not necessary. Well, on the record, though, they mentioned that there would be a written agreement. So that does suggest that there was another step that would need to be taken, at least at the oral argument. That's what on the record is. Yes, Your Honor. That indicates that there's an intent for the parties to prepare a written agreement. But case law, as a matter of law, intent to prepare a written agreement does not negate the existence of a prior contract. And that's a principle articulated in Doi v. Prepper. Parties can bind themselves to an agreement, especially a settlement or a record like this, regardless of whether their intent to prepare a written agreement in the future. But what do we do with the statement that the parties want the court to retain jurisdiction to resolve unresolvable disagreements? I mean, that kind of suggests the parties thought maybe this isn't the final agreement, even though the court did announce this was a settlement agreement. But then later, when they talk about court retaining jurisdiction for unresolvable disagreement, that raises some questions of whether this is truly the mutual set of the parties. How are we supposed to construe that language? Your Honor, you should construe that as in a way that's most consistent with a settlement agreement, which is, it's possible that unresolvable conflicts and difficulties might arise in the preparation of a written agreement or in enforcement of a settlement agreement, just like why we are on the appeal now. However, and that's why the parties request the Northern District to retain jurisdiction. But what is undeniable and unequivocal is that the judge did say that this is a binding settlement agreement. The parties are not required a written agreement. I mean, the judge is not a party to the agreement, so the judge's characterization of the parties. Your Honor, that is not a characterization of the settlement agreement. The judge was reciting terms to the settlement agreement, and if the parties did not agree that this is a binding settlement agreement, they should have spoke up and said this is not binding settlement agreement. This is not binding the binding nature's condition upon original agreement. Just like my client and his former counsel did speak up and added an additional term asking the Northern District to retain jurisdiction. So what Judge Kim was repeating was verbatim what the parties had prepared? That's correct, Your Honor. And to respond to some of the questions... Is that clear as a matter of law though? Is that that it is it absolutely clear and I don't necessarily see that in the records. You said these are the terms, but you didn't say these are the only terms. Your Honor, there's no indication in the record that there will be additional terms to be added into original agreement or... Is it your position then that if there had been additional terms as a matter of law, it was Mr. Byatt's obligation to raise that? So he had to say, wait a minute, Your Honor, there are additional terms? Your Honor, it is either appellant or appellant's former counsel to raise a term that will be inconsistent with what the judge has placed on the record. If the judge said this settlement is binding and if you do not agree to it, you should raise that to both the judge and my client and his former counsel. But none of that was done. Of course, parties can add or agree to a different written agreement in the future, but what should matter is what you agree in front of the federal judge placed on the record. And I also want to point out in the record that what was recited into the record by Judge Kim as a settlement of the parties was derived from a proposal prepared by appellant themselves. So that's in ER 64. And during the communications between attorney-client privilege communications between appellant and his former counsel, none of them actually refer to my client willing to add an extraneous term. All of them pertain to yes, we, meaning appellant's former counsel. Yes, we can try to insert that. We can try to add that. So I take it from what you've said here in answering Judge Lee's question about the fact that there was a reservation that the magistrate judge could resolve issues concerning the agreement which was set forth on the record, that those issues only could relate to what was set forth as the terms of the agreement. Is that what you're saying? I'm not sure that was what I'm saying. What I meant to say was that there are many unresolvable conflicts with this case, even if this case was settled and closed. Why wouldn't that include as an unresolvable conflict that there had to be a representation provision? It's possible that appellant wants to add a new extraneous term to a new written agreement that does not reflect the settlement agreement, and that could be an unresolvable conflict that we will ask the Northern District to resolve and hence the case was filed there. But what that does not change is that as a matter of law, it contradicts the settlement on the record, and the settlement of record is still a binding enforceable agreement as a matter of law based on California state law in this court. I know you were relying on the Doi case, but what about the Kajave case where the court does deal with, in particular, oral agreements? And as I understand it, it says there are two kinds of agreements. One is where the parties reach an oral agreement with the expectation that a written agreement will follow. Two possibilities exist. Negotiations can result in a binding oral agreement, quote, citing the Lewis case, when all of the terms are definitively understood, even though the parties intend to later execute a formal writing. Now, I presume you're relying on that possibility of an oral agreement, but, you know, the counsel for the plaintiff is going to say that the terms were not definitively understood. And then it says, alternatively, where the parties writing and sign, no binding contract results until it is done. And that's the plaintiff's position. Your Honor, that case does not ring a bell, and I apologize, but those cases where the court talks about the two different types of oral agreement and whether the party's intent might be derived from other extrinsic evidence, almost all, and I believe all of the cases, concern contract agreements have ambiguous and unclear terms. I mean, here we have a settlement record that unambiguously said this is a binding settlement agreement, and if you have other evidence that contradict that term, California, settled principles of California state law says the objective inquiry should be governed by the words of the instrument itself, especially when the instruments are clearly stated on the record, approved by both appellants and its counsel. Now, I will say, even though this case was raised in the reply brief, is that you do not believe that Kajabi has any applicability here? Yes, yes, that's true, Your Honor. And as well as many other cases of the appellant sites, for example, Master Sign, Terry versus Colon, all those cases concern contract terms that are so ambiguous that neither the court nor the parties know how to perform the contract, know what their parties and obligations are, because the terms are so ambiguous or even unstated as in Master Sign. Yes, the courts need to look to other evidence that could inform what the contract actually is. Now, here the contract is the settlement on the record before a federal judge, where appellants and its counsel said yes, yes, yes, multiple times to all the terms on the record. There's no ambiguity here. And contrary to what the appellants argued, the district court below did consider all the allegations and construed them as true. But because it's a matter of law, they cannot contradict the objective manifestation of assent. I see that my time is up. May I just quickly wrap up? I think we've gone beyond the time. Okay, great. Thank you. Thank you. You have two minutes. I just want to respond quickly. I think the key point here is that this is an intensely factual question. And the question here is not whether we have proven that there was uncertain whether the objective manifestations do not show an intent to be bound, but whether a fact finder could permissibly conclude based on the allegations in the complaint that the parties do not intend to be bound. And I think that in that sense, this case is nothing like DOI, because there are numerous effective manifestations that the parties envisioned further negotiation, envisioned unresolvable disagreements, and that view the written agreement as being required. And I want to make clear one key thing here. There is absolutely nothing inconsistent about the term that Byatt wanted included and the terms that were stated on the record before Judge Kim. It is simply something, in addition, it's no different than what was at issue in Masterson. And again, if you look at page 52 of the excerpts of record, you can see that clearly when Judge Kim stated that the oral agreement was binding, literally the same paragraph says, this is my understanding, as in her understanding of the agreement. It was not one of the terms. It was only later that she said, now I'll start reciting the terms of the agreement, which did not include any suggestion that the agreement was binding or any suggestion that there was some sort of integration clause, as there are in other in-court settlement agreements. If you look at the Elio Dion case on which Davis relies heavily, one of the terms that was recited on the record is there are no other terms. This is the complete agreement that is completely absent here. Let me ask you a question. As I read Judge Spiro's order, he mentioned there was an evidentiary hearing. And if there was an evidentiary hearing, there was not? No, there was not. It was a hearing on the motion to dismiss, but it was standard. The trial court, you did argue there are issues of fact. Absolutely. I mean, that was our entire argument, which was that we've made factual allegations, and those allegations taken as true establish an entitlement to relief. And Bustamante makes clear that contract formation is an intensely factual question. And I see my time is up, but I do want to again emphasize the rescission claim, which has not come up very much, but that is an equally strong reason that the district court's decision should be reversed as the mistake that Byatt made here was clearly a factual one and not a legal one. Thank you. The case has been submitted, and we are adjourned for the day. Thank you very much.
judges: Silver, Lee, Bumatay